IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

In re:

Dominic and Barbara Gorniak,　　　　　　　　　　　　　　　　　　Chapter 7

　　　　　　　Debtors.　　　　　　　　　　　　　　　　　　　　　Case No. 13-15827

MEMORANDUM DECISION

　　　　Debtors Dominic and Barbara Gorniak (collectively "Debtors") filed a chapter 11 bankruptcy petition on December 6, 2013. A creditor objected to Debtors' claim of exemptions.

　　　　DeWitt Ross & Stevens was originally employed as Debtors' attorney but Steinhilber, Swanson & Resop ("SSR") was approved to substitute, by stipulation, on May 16, 2014. A little over a month later, on June 25, 2014, Debtors filed amended schedules B and C and a motion to convert the case to chapter 7. Yet another amended schedule C was filed on June 26, 2014. The motion to convert was granted on June 27, 2014. The trustee, Michael Kepler, promptly objected to the exemptions claimed on the amended schedules and requested that the court issue a notice of probable assets. His objection was resolved before a final hearing was held.

　　　　SSR filed an application for compensation on August 20, 2014 to which Mr. Kepler also objected. The contested fee application requests final approval as administrative expenses for all fees charged by SSR, incurred from May 1, 2014 to June 27, 2014. This is the period SSR performed legal services for Debtors while the case was in chapter 11.

　　　　Mr. Kepler specifically objected to the fees concerning the schedule C exemptions. He claims that even after several prior incarnations, the amended schedule C was severely flawed and caused him to spend significant time and effort analyzing and objecting to the exemptions

1

claimed. SSR seems to take the position that because successive claims of exemptions each got smaller, the work done on exemptions aided the bankruptcy estate. This reduction in over-claimed exemptions is argued to be consistent with best practices.

Cross-analysis of the amended exemption schedules filed on January 28, 2014 ("C2") and June 25, 2014 ("C3") reveals the changes made after SSR was employed as counsel. Prior to SSR's employment, Debtors' C2 claimed total exemptions of $290,219.64. After SSR's employment, C3 reflected reduced exemptions of $71,176.21. Five items were removed from C2 and account for the reduction in C3:

```
$290,219.64 = C2
$ 71,176.21 = C3
$219,043.43 = Difference in values
$150,000.00 = Apache Court property removed b/c stay was lifted (underwater property)
$ 69,043.43 = New total
$     100.00 = Apache Court bedroom does not appear on C2 (no secured claim)
$ 68,943.43 = New total
$ 67,778.64 = Life insurance secured by $65,971.00 claim
$  1,164.79 = New total
$ 30,000.00 = RAS Solutions (dispute about whether Debtors have ownership interest)
-$ 28,835.21 = New total
$  6,000.00 = Mercedes Benz (unclear whether this is collateral for a secured debt)
-$ 34,835.21 = Total added amount of exemptions claimed which accounts for C2 value and reductions
```

The chart above demonstrates the major differences between C2 and C3. At most, SSR returned $37,907.64 to the estate by removing exemptions. However, it added another $34,835.21 in new exemption claims. The majority of the added exemptions were household goods that do not appear to be collateral for secured claims. Consequently, it is possible SSR benefitted the estate in the approximate amount of $3,072.43. However, this "benefit" is offset by the fact the trustee will charge about $4,000.00 for objecting to the exemptions.

Under 11 U.S.C. § 330 (a),

> (1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329,

2

> the court may award to … a professional person employed under
> section 327 or 1103—
>> (A) reasonable compensation for actual, necessary services
>> rendered…
>> …
> (2) The court may, on its own motion or on the motion of the
> United States Trustee… award compensation that is less than the
> amount of compensation that is requested.
> (3) In determining the amount of reasonable compensation to be
> awarded to a …. professional person, the court shall consider the
> nature, the extent, and the value of such services, taking into
> account all relevant factors, including—
>> …..
>> *(C) whether the services were necessary to the*
>> *administration of, or beneficial at the time at which the*
>> *service was rendered toward the completion of, a case*
>> *under this title….*
>
> (4) (A) Except as provided in subparagraph (B), the court shall not
> allow compensation for –
>> ….
>> (ii) services that were not—
>>> (I) reasonably likely to benefit the debtor's estate;
>>> or
>>> (II) necessary to the administration of the case

11 U.S.C. § 330(a)(1)(A), (2), (3)(C), (4)(A)(emphasis added).

The burden of proof to show that the requested fees are merited is "always on the applicant." *In re Hutter Const. Co., Inc.*, 126 B.R. 1005, 1011-12 (Bankr. E.D. Wis. 1991) (citing *In re Oberreich,* 109 B.R. 936, 938 (Bankr. E.D. Wis. 1990). After the applicant has presented a prima facie case, the burden of production shifts to the objecting party, although the burden of persuasion remains with the applicant. *Hutter*, 126 B.R. at 1011. The applicant "must demonstrate that the services were actual, necessary and reasonable." *Id.* (citing *In re Grabill Corp.,* 110 B.R. 356, 358 (Bankr.N.D.Ill.1990)).

> The case law that has developed around this statute is relatively
> straight forward… In addition to demonstrating that the fees
> sought are reasonable as required by the statute, a growing number
> of courts have held that the applicant must also convince the

3

> bankruptcy court that the fees sought were incurred for the benefit of the estate. *See, e.g., In re Reed,* 890 F.2d 104, 105 (8th Cir.1989); *Trustees of the Amalgamated Ins. Fund v. McFarlin's, Inc.,* 789 F.2d 98, 101 (2d Cir.1986); *Mayer, Glassman & Gaines v. Washam (In re Hanson),* 172 B.R. 67, 70–73 (Bankr.9th Cir.1994); *In re Kingsbury,* 146 B.R. 581, 585 (Bankr.D. Me.1992) (collecting cases); *In re Sounds Distrib. Corp.,* 122 B.R. 952, 955 (Bankr.W.D. Pa.1991).

*In re Mazzocone*, No. 93-12296S, 1995 WL 113110, at *8 (E.D. Pa. Mar. 16, 1995).

Awarding a chapter 11 debtor's attorney fees for the exemption work in this case poses a unique question. Increasing the amount of a debtor's exempt property surely does not benefit the estate. But, does reducing what is claimed exempt in response to an objection do so? I did not find any seventh circuit cases on the issue, but *In re Hogg* from the district of South Dakota sheds some light. A portion of the holding focused on items in the fee application which concerned exempt property:

> It is unnecessary to examine the merits of Mr. Gors' attempt to exempt life insurance with a benefit value exceeding $20,000.00 and to exclude cash equal to the value of excludable property. Time spent attempting to exempt property is not recoverable from the estate. *Ellrich, supra,* (citing numerous similar holdings.) "This is a nonadministrative, postpetition service of benefit only to the debtors, analogous to the defense of criminal charges or resisting challenges to the debtor's discharge." *Id.,* at 1259, 81 B.R. 132.

*In re Hogg*, 103 B.R. 207, 210 (Bankr. D.S.D. 1988). Thus, *Hogg* suggests no exemption work is compensable by the estate.

Similarly, the Court of Appeals for the Eighth Circuit has reduced fees when counsel was aware or should have been aware reorganization was not a realistic possibility.

> While it is not necessary to have a successful reorganization in order for debtor's counsel to be awarded fees, fees may be denied when counsel should have realized that reorganization was not feasible and therefore services in that effort did not benefit the estate. *In re Coones Ranch, Inc.,* 7 F.3d 740, 744 (8th Cir.1993); *715 In re Lederman Enter., Inc.,* 997 F.2d 1321, 1324 (10th

4

> Cir.1993) (fees may be disallowed where counsel knew or should
> have known that reorganization was not a viable possibility).

*In re Kohl*, 95 F.3d 713, 714-15 (8th Cir. 1996); see also *In re Berg*, 268 B.R. 250, 261-62 (Bankr. D. Mont. 2001)(As one bankruptcy court wrote: "The Court does not expect the attorney to succeed in every endeavor he undertakes on behalf of the client. But the endeavor for which the estate is expected to pay must be reasonably calculated to produce a benefit to the estate." *Crown Oil,* 18 Mont. B.R. at 518, 257 B.R. at 541 *In re Hunt,* 124 B.R. 263, 267 (Bankr. S.D. Ohio 1990). "Chapter 11 cases which lack viable chances of reorganization may place the fees of counsel at risk." *Id.; In re MFlex Corp.,* 172 B.R. at 857 (*quoting In re Offield,* 128 B.R. 548, 550 (Bankr. W.D. Mo.1991)); *In re Lederman Enterprises, Inc.,* 143 B.R. at 775.).

In this case, SSR performed services on claims for Debtors' exemptions which did not produce a benefit to the estate. It filed two amended schedule C's, one on the same day as the motion to convert and the other the next day. Those fees must be denied. First, because exemption work performed by a chapter 11 debtor's attorney is of no benefit to the estate. Second, because it is highly unlikely SSR thought reorganization was feasible at the time they were amending schedule C. The steps taken by SSR after they were appointed appear to prepare the case for conversion to chapter 7. These actions do not suggest a belief that reorganization was feasible. Consequently, any exemption adjustments during the time period SSR knew the reorganization was not feasible and planned to convert to chapter 7 ought to be disallowed. The Trustee's objection to the application for compensation must be sustained. It may be so ordered.

Dated: December 1, 2014

ROBERT D. MARTIN
UNITED STATES BANKRUPTCY JUDGE

5